## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FRANK LEBITO LIZAMA, | : | |
| Plaintiff, | : | Civ. No. 13-3177 (KM) (MCA) |
| v. | : | **OPINION** |
| ROY HENDRICKS, et al., | : | |
| Defendants. | : | |

**KEVIN MCNULTY, U.S.D.J.**

### I.      INTRODUCTION

Plaintiff, Frank Lebito Lizama, is currently detained at the Essex County Correctional Facility in Newark, New Jersey.  He is proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983.  Lizama's application to proceed *in forma pauperis* will be granted based on the information provided therein.  Accordingly, the Clerk will be ordered to file the complaint.

At this time, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit.  For the reasons set forth below, the complaint will be permitted to proceed in part.

### II.      BACKGROUND

The allegations of the complaint will be accepted as true for purposes of screening.  In his complaint, Lizama lists several defendants: (1) Essex County Jail Warden Roy Hendricks; (2) ICE County Supervisor Mr. Perilo; (3) Medical Director Annicette; (4) P.A. Velma Brown; (5)

Nurse Katie Morris; (6) Pharmacists; (7) Sergeant Johnson; (8) Officer Flauharty; (9) C/O Glass; (10) Sergeant Bullome; (11) Lieutenant Caggiano. It appears from the face of the complaint that Mr. Lizama is detained at Essex County Correctional Facility as an immigration detainee.

Mr. Lizama arrived at the Essex County Correctional Facility on January 2, 2013. He states that on January 13, 2013, he complained of chest pain and shortness of breath, and was escorted to the medical office. Lizama was seen by a nurse who determined that he was having an anxiety attack from stress. While Lizama was waiting to be returned to his room, Officer Flauharty yelled at him, telling him that his medical problems were "malarkey." Flauharty then allegedly pulled Lizama by his shirt sleeve, threatened to "F. him up," and called him a piece of shit.

In late January, 2013, Sergeant Johnson and Officer Glass told Lizama that they needed to speak with him. Lizama was then handcuffed by Johnson who used "excessive force." Sergeant Johnson told Lizama that as a detainee at the Essex County Jail he had no rights. Johnson placed Lizama in an empty room with his handcuffs still on, and told Officer Glass to watch him. After fifteen minutes in the room, Lizama pressed the intercom button to inquire when Sergeant Johnson would return, because the handcuffs were hurting him. Officer Glass then came into the room, pulledMr. Lizama by the arm and slammed his head into the wall two times. Officer Glass screamed at him "to tell his attorney and write the court."

Five minutes later, Sergeant Johnson returned, accompanied by Lieutenant Leake. Mr. Lizama told them that Officer Glass had assaulted him by slamming his head against the wall and requested medical attention. Johnson and Leake made no reply. Johnson then escorted Lizama to a lockdown unit. Johnson promised that he would try to get Lizama sent to Delaney

2

Hall if he signed and requested protective custody, but Lizama refused. Johnson then threatened Lizama that he would be kept permanently in lockdown.

After seventy-two hours in lockdown, Sergeant Cornelli arrived and stated that she could not release Mr. Lizama from the lockdown unit because of what Johnson had documented in the computer. Lizama handed her a grievance form regarding Flauharty's and Glass's assault. Cornelli promised to give the grievance to the social worker to be processed to the warden. The next day, Lizama was removed from the lockdown unit.

Several days later, Lizama saw social worker St. Phard who refused to notarize documents for him. She did make a copy of Lizama's complaint. After thirty minutes, Sergeant Bartaloni and Lieutenant Tufri came to see Lizama. Lizama revealed to them what had happened when Flauharty and Glass assaulted him. Turfi asked Lizama if he was pursuing his complaint in Court, but Lizama did not reply.

A week later, Lizama was called to medical and Flauharty was working there. Flauharty called him "a F.ing troublemaker and gay."

In March, 2013, Lieutenant Caggiano came to the library and ordered Lizama out of the library. He threatened to place Lizama on lockdown if he kept filing complaints against the staff.

Also in March, 2013, Sergeant Bullome told Lizama that he does not like him and that he would be placing him on lockdown "pretty soon."

Mr. Lizama also claims that the kitchen has failed on numerous occasions to send him his kosher meal. Sergeant Bullome was notified about this but has neglected his responsibility and verbally abused Lizama.

Lizama seeks monetary damages based on these allegations.

Mr. Lizama also raises issues with respect to the prison's purported denial of his Tapranavir medication. He has filed grievances to Warden Hendricks and ICE County Supervisor Perilo who have not responded to these grievances for his medication. Lizama also alleges that has spoken to Medical Director Annicette several times about this situation.

Nurse Katie Morris advised Lizama that pharmacists would not be ordering Tipranavir and that the doctor wanted nothing more to do with him. She further stated to Lizama that all he does is complain and that if she had her way, Lizama would be placed on lockdown. Lizama alleges that he has filed complaints against Nurse Morris but no action has been taken against her.

On March 12, 2013, Perilo stated to Lizama that he notified medical to deliver him his Tipranavir medication. On March 14, 2013, Nurse Katie refused to administer Tipranavir medication to Lizama. She further screamed at him that "according to pharmacy Tipranavir will not be order and furthermore Mr. Perilo is not a doctor and has no authority regarding medical and need to talk to Medical Director Mr. Annicette and pharmacy." (Dkt. No. 1 at p. 8.) She further told Lizama that the only way he was getting Tipranavir was if he had a connection in Washington.

On April 3, 2013, Velma Brown called Lizama to the nurses station whereby she told him that she was discontinuing his Tipranavir medication. She screamed at him to report her, the medical director and the warden to court. She further screamed to Lizama to sue the entire medical staff and that Lizama's "court order from Los Angeles court house is outdated and old." She told Lizama that the judge was not a doctor who controlled the medical staff. Furthermore, she prescribed Lizama Presista against his will which violated a court order that "clearly stated Lizama medication shall be administer twice daily as treating physician Dr. Musikanth

prescribed remain unchanged." (Dkt. No. 1 at p. 9.)  Lizama took the Presista against his will. The medication caused serious harm by inflating his liver, causing stiffness and swelling of the stomach with severe pain and bleeding in the rectum with constipation.  It also caused a bloated stomach and uncontrolled dizziness which caused Lizama to fall at times.

Mr. Lizama repeatedly filed grievances to treat his stomach infections and inflated liver as well as to administer his Tipranavir medication which were continually denied.  Lizama states that it is important that he receive his medication in order to live and that medical has willfully denied him his medication.

Lizama also states that his security custody level sheet is low custody, but he is nevertheless in Essex County Jail, which houses max, high and medium detainees.  He requests a transfer to a low custody level prison.  Lizama claims that the warden, the ICE County Supervisor and Immigration Officer La Forge have denied his requests and not responded to his grievances with respect to this issue.

Lizama further states that a colonoscopy performed on February 6, 2006 revealed the need for surgery to eliminate a cancerous polyp.

Finally, Lizama claims that he has problems seeing and has filed a grievance to see an eye specialist which was not responded to.

## III.    STANDARD OF REVIEW

### A.  Standard for *Sua Sponte* Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a

claim with respect to prison conditions, *see* 28 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[1], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

B. <u>Section 1983 Actions</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (per curiam) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

> thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV.   DISCUSSION

### A. Defendant Flauharty

Lizama claims that Defendant Flauharty verbally threatened him and pulled him by his shirt sleeve on January 13, 2013, while he was detained at the Essex County Correctional Facility. These allegations appear to be an attempt to assert a claim of cruel and unusual punishment against Flauharty. As Lizama is an immigration detainee, his claim against Flauharty is under the Fourteenth Amendment Due Process Clause. *See Adekoya v. Chertoff*, 431 F. App'x 85, 88 (3d Cir. 2011) (per curiam) (stating that an immigration detainee is entitled to the same protections as a pretrial detainee and when pretrial detainees challenge their conditions of confinement, a court considers "whether there has been a violation of the Due Process Clause of the Fourteenth Amendment"). In the excessive force context, the United States Court of Appeals for the Third Circuit has applied the standard enunciated in Eighth Amendment cases to excessive force claims by pretrial detainees *See Williams v. Guard Bryant Fields*, No. 11-3646, 2013 WL 4498670, at *3 n.4 (3d Cir. Aug. 23, 2013); *Drumgo v. Brown*,

525 F. App'x 125, 128 (3d Cir. 2013) (per curiam). I note, however, that even a more generalized due process "reasonableness" analysis would not change the result here.

For a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must show that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

> In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (internal quotation marks and citation omitted).

Lizama fails to state an excessive force claim against Flauharty. Verbal threats or taunts are not sufficient to violate the Constitution. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (per curiam) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment.") (citations omitted). To the extent that Lizama also alleges that Flauharty forcefully pulled him by his shirt sleeve, the complaint does not state facts that this force was anything beyond a trivial use of force. *See Hudson*, 503 U.S. at 9-10 (1992) ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.") (internal quotation marks and citations omitted); *see also Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive

force claim). Accordingly, the claim against defendant Flauharty will be dismissed without prejudice for failure to state a claim.

Lizama also alleges that Defendants Hendricks and Perilo are liable based on Flauharty's actions. (*See* Dkt. No. 1 at p. 5.) As stated above, however, the allegations of the complaint fail to state a claim against Flauharty. Thus, Hendricks and Perilo would not be secondarily liable. Further, and perhaps more importantly, it appears as if Mr. Lizma bases his claim for liability against these two defendants on a theory of *respondeat superior*. This theory is legally inadequate because "[i]n order for liability to attach under § 1983, a plaintiff must show that a defendant was personally involved in the deprivation of his federal rights." *Fears v. Beard*, 532 F. App'x 78, 81 (3d Cir. 2013) (per curiam) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "[L]iability cannot be predicated solely on the operation of *respondeat superior*." *Evancho*, 423 F.3d at 353 (citation omitted). For this reason, too, Lizama fails to state a claim against Defendants Hendricks and Perilo based on Flauharty's actions.

B. Defendant Johnson

Against Defendant Johnson, Lizama appears to be asserting claims based on excessive force and deprivation of medical care. Lizama states that Johnson used excessive force when handcuffing him, that he refused to respond to Lizama's complaint of being assaulted by defendant Glass and request for medical attention, and that he instead escorted Lizama to lockdown where he stayed for three days.

The only excessive-force harm that Lizama alleges is that the handcuffs were hurting him. It was while Johnson was still absent that Glass allegedly entered the room and slammed Lizama's head against the wall twice.

9

The complaint as stated, does not state an excessive force claim against Johnson. Lizama's only complaint or request that the handcuffs be loosened occurred when Johnson was absent. Lizama does not allege that he suffered injury or sought medical attention as a result of being handcuffed. Nothing in the complaint suggests that Johnson handcuffed Lizama maliciously or sadistically to cause harm; nor would any of the allegations fall afoul of a more generalized due process "reasonableness" analysis. At best, the handcuffing for approximately fifteen minutes constituted a minimal use of force that is insufficient to state an excessive force claim. *See Hudson*, 503 U.S. at 10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.") (internal quotation marks and citations omitted); *see also Fears*, 532 F. App'x at 82 (affirming district court's grant of summary judgment in favor of defendant where plaintiff's allegations that defendant used excessive force by handcuffing him only established a *de minimis* use of force which is insufficient to state a claim under the Eighth Amendment); *Farha v. Silva*, No. 06-755, 2011 WL 674041, at *9 (E.D. Cal. Feb. 16, 2011) (plaintiff failed to state an Eighth Amendment claim due to overly tight handcuffs as "[t]here is no evidence that the handcuffing incident involved more than a *de minimis* use of force."), *report and recommendation adopted as modified on other grounds*, 2011 WL 1344563 (E.D. Cal. Apr. 8, 2011).

Lizama's claim that Johnson denied him medical care claim arises from the alleged assault by defendant Glass, approximately five minutes before Johnson reentered the room. As an immigration detainee, Lizama possessed the same liberty interests as a pretrial detainee under the Due Process Clause. *See Adekoya*, 431 F. App'x at 88 (citing *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000)). To state a Fourteenth Amendment claim of inadequate medical

attention, Lizama must allege that a defendant acted with deliberate indifference to his serious

medical needs. *Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (per curiam)

(citing *Revere v. Mass. Gen. Hosp.*, 463, 239, 243-44 (1983); *Natale v. Camden Cnty. Corr.*

*Facility*, 318 F.3d 575, 581 (3d Cir. 2003)).  The standard used to evaluate a Fourteenth

Amendment claim for inadequate medical care is similar to that under the Eighth Amendment

(though again, a due process "reasonableness" analysis would not change the result here).

> For the delay or denial of medical care to rise to a violation of the
> Eighth Amendment's prohibition against cruel and unusual
> punishment, a prisoner must demonstrate "(1) that defendants were
> deliberately indifferent to [his] medical needs and (2) that those
> needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.
> 1999).  Deliberate indifference requires proof that the official
> "knows of and disregards an excessive risk to inmate health or
> safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582
> (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837
> (1994)).  We have found deliberate indifference where a prison
> official: "(1) knows of a prisoner's need for medical treatment but
> intentionally refuses to provide it; (2) delays necessary medical
> treatment based on a nonmedical reason; or (3) prevents a prisoner
> from receiving needed or recommended treatment." *Rouse*, 182
> F.3d at 197.  Deference is given to prison medical authorities in the
> diagnosis and treatment of patients, and courts "disavow any
> attempt to second-guess the propriety or adequacy of a particular
> course of treatment. . . (which) remains a question of sound
> professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*,
> 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551
> F.2d 44, 48 (4th Cir. 1977)).  Allegations of negligent treatment or
> medical malpractice do not trigger constitutional protections.
> *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam).  The Third Circuit has also

noted that deliberate indifference can be found "where the prison official persists in a course of

treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*,

505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted).  "A

medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is

so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See*

*Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (per curiam) (quoting *Atkinson v.*

*Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*,

834 F.2d 326, 347 (3d Cir. 1987))).

Lizama has alleged a deprivation of medical care claim against Johnson. According to

the complaint, Johnson' only response was to place him in lockdown for three days. Those

allegations are consistent with a claim of deliberate indifference. This claim will therefore be

permitted to proceed.

C. Defendant Glass

Lizama has stated an excessive force claim against Defendant Glass. Specifically, the

complaint alleges that after plaintiff was handcuffed and placed in a room by Johnson, Glass

came into the room, pulled Lizama by the arm and slammed his head against the wall twice.

Based on the allegations in the complaint, this excessive force claim will be permitted to proceed

against Glass.

D. Defendant Caggiano

The complaint also attempts to assert a retaliation claim against Defendant Lieutenant

Caggiano. Caggiano allegedly threatened Lizama that he would personally place him on twenty-

four hour lockdown if he kept filing complaints against prison staff.

> "A prisoner alleging retaliation must show (1) constitutionally
> protected conduct, (2) an adverse action by prison officials
> sufficient to deter a person of ordinary firmness from exercising
> his constitutional rights, and (3) a causal link between the exercise
> of his constitutional rights and the adverse action taken against
> him."

*Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (per curiam) (quoting *Mitchell v. Horn*, 318

F.3d 523, 530 (3d Cir. 2003)).

Lizama alleges in the complaint that he filed grievances against Flauharty and Glass. The filing of such grievances would qualify as constitutionally protected conduct. *See Laurensau v. Romarowics*, 528 F. App'x 136, 139 (3d Cir. 2013) (per curiam) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

The complaint fails, however, to allege an adverse action. In *Dunbar,* 487 F. App'x at 723, the plaintiff brought a retaliation claim against prison officials. The adverse action, plaintiff alleged, was that defendants "threatened him by telling him to give up his legal campaign, and by remarking that he was a marked man and that his days were numbered." *Id.* at 723. Additionally, staff members harassed plaintiff by putting pillowcases on their heads to mimic the Ku Klux Klan, made gestures similar to the Nazi salute and posted an offensive picture on plaintiff's cell door. *See id.* at 722. The plaintiff also complained that a defendant threatened to send him to another housing unit and write him up for an alleged infraction. *See id.* The Third Circuit determined that those verbal threats and gestures of racial harassment were not sufficiently adverse to support a retaliation claim. In so holding, the Third Circuit gave examples of conduct it had found sufficient to constitute adverse action: specifically, "several months of disciplinary confinement; denial of parole, financial penalties, and transfer to an institution whose distance made regular family visits impossible; and placement in administrative segregation that severely limited access to the commissary, library, recreation, and rehabilitative programs." *Id.* at 723 (citing *Mitchell*, 318 F.3d at 530; *Rauser*, 241 F.3d at 333; *Allah v. Seiverling*, 229 F.3d 220, 225-26 (3d Cir. 2000)).

The adverse action that Lizama alleges does not approach the level of the threats and harassment found *not* sufficient in *Dunbar,* let alone the actions that were found sufficient in the other cited cases. Lizama alleges a single verbal threat to place him on lockdown. That is not an

13

adequate allegation of adverse action. Lizama's retaliation claim against Caggiano will be dismissed without prejudice for failure to state a claim.

E.   Defendant Bullome

Lizama claims that Defendant Sergeant Bullome came to his dorm in March, 2013. Bullome purportedly told Lizama that he did not like him and stated that Lizama would be placed on lockdown pretty soon.  This verbal threat or taunt does not violate the Constitution and is insufficient to state a claim against Bullome. *See Dunbar*, 487 F. App'x at 723.

Lizama also alleges that Bullome was neglectful in his responsibility to provide him with his kosher meal.  The Court construes this allegation as an attempt to assert a Free Exercise claim under the First Amendment.  The First Amendment states that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. CONST. amend. I.  The Supreme Court has explained that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (citations omitted).  "'Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.'" *DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000) (en banc) (quoting *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987)).  Nevertheless, "[t]he mere assertion of a religious belief does not automatically trigger First Amendment protections, however.  To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *Id.* at 51.  Accordingly, "if a prisoner's request for a particular diet is *not* the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request." *Id.* at 52.

14

In this case, Lizama has never identified his faith for purposes of obtaining a kosher diet. He simply states that Dullome refused or neglected to provide him with one.  More is required. *See Williams v. Aramark Inc.*, No. 10-3469, 2011 WL 1988429, at *2 (D.N.J. May 20, 2011) ("[T]o state a claim under the Free Exercise Clause, the facts alleged must support a finding that a prisoner's request for a special diet is based on his own sincerely held religious beliefs.") (citation omitted); *Banks v. Fraiser*, No. 06-4152, 2007 WL 38909, at *3 (D.N.J. Jan. 4, 2007) (finding that plaintiff failed to state a free exercise claim where he never identified his faith for purposes of obtaining a religious diet).  Accordingly, Lizama's free exercise claim against Dullome will be dismissed without prejudice for failure to state a claim.

F.   <u>Remainder of Complaint - Denial of Medication/Improper Medication/Placement in Essex County Correctional Facility/Polyp Surgery/Eye Issues</u>

The remainder of the complaint focuses on several issues, mainly medical, separate and apart from Lizama's claims that prison guards are physically mistreating him.  For example, Lizama asserts that he has continually been denied his Tipranavir medication while at the Essex County Correctional Facility and that the medication he was provided caused serious harm.  He further claims that he should be housed at a lower level security prison.  Additionally, he alludes to a purported fact that polyp surgery was recommended and that he has issues with his eyes. Lizama alleges that Roy Hendricks, Mr. Perilo, Medical Director Annicette, P.A. Velma Brown, Nurse Katie Morris and unnamed Pharmacists are liable based on these additional claims.

A District Court can raise the issue of improper joinder *sua sponte.  See Chen v. Shan Qiao Zhang*, No. 10-6255, 2011 WL 612727, at *2 (E.D. Pa. Feb. 10, 2011) (citing FED. R. CIV. P. 21; *Schulman v. J.P. Morgan Inv. Mgmt., Inc.*, 35 F.3d 799, 804 (3d Cir. 1994); *Braverman v. Kaskey, P.C. v. Toidze*, Civ. A. No. 09-3470, 2010 WL 4452390, at *2 (E.D. Pa. Nov. 4, 2010)). Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim . . . may join, as

independent or alternative claims, as many claims as it has against an opposing party."  Federal Rule of Civil Procedure 20(a)(2) states as follows:

> Persons . . . may be joined in one action as defendants if:
>
> (A) Any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction or occurrences; and
> (B) Any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2).

> In actions involving multiple defendants Rule 20 operates independently of Rule 18. . . . Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.  If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1655 (3d ed.).  Claims by incarcerated individuals are not exempt from Rules 18 and 20.  *See McDaniel v. Lanigan*, No. 12-3834, 2012 WL 5880371, at *3 (D.N.J. Nov. 21, 2012) (citing *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)).  Rule 20's requirements are to be liberally construed in the interest of convenience and judicial economy.  *See Paladino v. Newsome*, No. 12-2021, 2012 WL 3315571, at *5 (D.N.J. Aug. 13, 2012) (citing *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002)).  Nevertheless, this liberal application "is not a license to join unrelated claims and defendants in one lawsuit."  *Id.* (citing *Pruden v. SCI Camp Hill*, 252 F. App'x 436 (3d Cir. 2007) (per curiam); *George*, 507 F.3d 605; *Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir. 1997)).

In this case, Lizama's additional claims of denial of medication//medication causing injury/placement at Essex County Correctional Facility/polyp surgery and eye issues do not arise out of the same occurrence or transactions nor do they raise a question of law or fact common to his claims against the prison guards for their purported mistreatment of him. Accordingly, these claims are not properly included in this complaint per the joinder rules. *See McDaniel*, 2012 WL 5880371, at *3 (finding that plaintiff cannot "lump" claims of limitations on commissary purchases, limitations on frequency of showers, lack of approval of meals by the U.S. Food and Drug Administration, denial of Halal food to Muslim prisoners, denial of kosher milk and glatt kosher meals to Jewish inmates and bars on wearing tallits in a single pleading); *see also Miller v. Lanigan*, No. 12-4470, 2013 WL 1750138, at *2 (D.N.J. Apr. 23, 2013) (stating that a plaintiff cannot "lump" all his challenges into a single pleading where claims violate joinder rules set out in Federal Rules of Civil Procedure 18 and 20).

In remedying this misjoinder, "a court may not simply dismiss a suit altogether. Instead, the court has two remedial options: (1) misjoined parties may be dropped 'on such terms as are just'; or (2) any claims against misjoined parties 'may be severed and proceeded with separately.'" *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (quoting Fed. R. Civ. P. 21). In *DirecTV*, the Third Circuit explained the effect of each of these options:

> When a court "drops" a defendant under Rule 21, that defendant is dismissed from the case without prejudice. *Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1068 (3d Cir. 1979); *see also Elmore v. Henderson*, 227 F.3d 1009, 1011-12 (7th Cir. 2000) (Posner, J.). When that occurs, the "statute of limitations is not tolled" because we treat the initial complaint "as if it never existed." *Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 2005) (internal quotation marks omitted). But when a court "severs a claim against a defendant under Rule 21, the suit simply continues against the severed defendant in another guise. *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999); *Elmore*, 227 F.3d at 1012. The statute of limitations is held in abeyance, and

the severed suit can proceed so long as it initially was filed within the limitations period. *Id.*

Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is "just."

*DirecTV*, 467 F.3d at 845.

The applicable statute of limitations for Lizama's § 1983 claims is two years. *See Vickers Childs*, 530 F. App'x 104, 105 (3d Cir. 2013) (per curiam) (stating that a § 1983 claim is governed by the applicable state's personal injury statute of limitations and New Jersey has a two year statute of limitations for such claims) (citations omitted). Lizama states in his petition that he arrived at the Essex County Correctional Facility on January 2, 2013. Accordingly, the two-year statute of limitations as to these additional claims against these additional Defendants cannot have expired. Therefore, dismissal of the claims against these Defendants on these unrelated claims is "just." Lizama should still have time under the applicable statute of limitations to file separate actions against these Defendants that assert these unrelated claims.

Therefore, Lizama's additional, improperly joined claims against Roy Hendricks, Mr. Perilo, Officer La Forge, Medical Director Annicette, P.A. Velma Brown, Nurse Katie Morris and unnamed Pharmacists will be severed and dismissed from this action pursuant to Federal Rule of Civil Procedure 21.

## V.    CONCLUSION

For the foregoing reasons, Lizama's claims against Defendants Flauharty, Caggiano and Dullome will be dismissed without prejudice for failure to state a claim.  To the extent that Plaintiff alleges a claim against Defendants Hendricks and Perilo based on Flauharty's actions, that claim is dismissed. His excessive force claim against Defendant Johnson will be dismissed without prejudice for failure to state a claim.  However, Lizama's deprivation of medical care claim against Defendant Johnson will be permitted to proceed.  Lizama's excessive force claim against Defendant Glass will be permitted to proceed.  His claims against Defendants Hendricks, Perilo, La Forge, Annicette, Brown, Morris and unnamed Pharmacists will be dismissed without prejudice based on improper joinder.  An appropriate order will be entered.

DATED:  February 20, 2014

KEVIN MCNULTY
United States District Judge